IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

MICHAEL DEANDRE WILLIAMS,

      Plaintiff,

v.                                      Case No. 2:19-cv-00067

PRIMECARE MEDICAL, INC., *et al.*,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable John T. Copenhaver, Jr., Senior United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court are a Motion to Dismiss (ECF No. 32), filed by Defendant J.T. Binion, and a Motion to Dismiss and alternative Motion for Summary Judgment (ECF No. 34), filed by PrimeCare Medical, Inc., Jessica Thornhill, and Tina Fouts-Sneed[1] (collectively "the PrimeCare Defendants").[2]

### I.    *RELEVANT PROCEDURAL HISTORY*

**A.    Remaining defendants and claims.**

This matter is proceeding on Plaintiff's amended complaint (ECF No. 7), which addresses two overarching issues: (1) claims surrounding improper administration of

---

[1] This defendant was named in the amended complaint as "Nurse Trina or Tina (LNU)." Defendants have properly identified her as "Tina Fouts-Sneed" in their motion. Accordingly, the Clerk is directed to modify the docket sheet to reflect the full and proper name of this defendant.

[2] Four other former PrimeCare employees (Nurse Molly (LNU), Nurse Ruthanna (LNU), Nurse Joslin (LNU) and Anna Hager) have not been successfully served with process and have not presently appeared herein. A fifth additional defendant, Kitchen Administrator Kim (LNU) has also not been served with process or appeared in this matter. The undersigned will address these defendants in a separate order.

Plaintiff's medication for Human Immunodeficiency Virus ("HIV"); and (2) claims surrounding the failure to provide Plaintiff with double portions of his meal trays and "p/m snack bags" (collectively "meal supplements") as allegedly prescribed by a doctor. Plaintiff claims that these actions caused him to lose weight and that his medical condition worsened, further causing pain and suffering and emotional distress. Although Plaintiff's claims for monetary damages are still at issue, his claims for declaratory and injunctive relief have been dismissed as moot following his release from WVDCR custody. (ECF No. 41). The presiding District Judge has also dismissed all claims against the West Virginia Division of Corrections and Rehabilitation ("WVDCR"), the South Central Regional Jail, Sergeant Thompson, Corporal Ryan Webb, Officer Pollard, Sergeant Jaburs Terry, and former SCRJ Administrator Brad Douglas. (*Id.*)

**B.    Relevant time period of amended complaint.**

The parties' documents present a convoluted timeline. Plaintiff filed his initial complaint in this matter on January 25, 2019. At that time, he was incarcerated at the Southern Regional Jail ("SRJ") in Beaver, West Virginia. His complaint, however, alleged claims arising out of his "medical deprivation" at the South Central Regional Jail ("SCRJ") in Charleston, West Virginia, beginning on or about July 23, 2016. (ECF No. 2 at 5). In the initial complaint document, Plaintiff described his claims as follows: "PrimeCare Medical and [West Virginia Regional Jail] and [West Virginia Division of Corrections and Rehabilitation] [have] deliberately caused me medical harm crushing and [depriving] med meals. Their [timing] and crushing has [depleted] my life expectancy." (*Id.*) Attached to the initial complaint was a "Workflow Interaction" detailing grievances or

complaints Plaintiff had made to SCRJ or medical staff between July 23, 2016 and December 27, 2018. (*Id.*, Ex. 1).[3]

Plaintiff filed his amended complaint in this matter on May 21, 2019 (while still incarcerated at the SRJ). Plaintiff's amended complaint alleges that, while he was incarcerated at the SCRJ from approximately July 23, 2016 to January 18, 2019,[4] PrimeCare Medical, Inc.'s ("PrimeCare") staff improperly crushed his prescribed time-released HIV medication ("Atripla"), delivered the medication at inconsistent and inconvenient times, and, on occasion, and failed to timely reorder it, leaving him without any medication for periods of time. He alleges that "[t]he skipping and changing to timing of the medication caused my virus amount to increase and made the infection difficult to treat it became (resistant)." (ECF No. 7 at 16). The amended complaint contends that this conduct by the PrimeCare Defendants violated Plaintiff's Eighth Amendment rights.

Specifically, Plaintiff alleges that Tina Fouts-Sneed ("Fouts-Sneed"), a nurse employed by PrimeCare, crushed his Atripla medication on at least one specified occasion (October 18, 2018) and, after he complained about it, Fouts-Sneed allegedly became

---

[3] Plaintiff filed a second complaint (2:19-cv-00068) which was practically identical to the initial complaint in this civil action. At a status conference held on May 14, 2019, Plaintiff agreed to voluntarily dismiss the second civil action and was granted leave to file an amended complaint in this civil action by May 28, 2019. (ECF No. 6).

[4] Although the undersigned previously believed that Plaintiff was a federal pre-trial detainee during the operative time period of the amended complaint, from a review of his federal criminal cases also filed in this court (2:13-cr-00270-01 and 2:18-cr-00264-01), it appears that he was a sentenced federal prisoner who had been removed from a halfway house and was being housed at the SCRJ beginning in late July of 2016. He was subsequently released to supervision and was then re-arrested on a series of supervised release violations and new criminal charges, of which he was eventually convicted, and returned to federal prison. Apparently, he was held at the SCRJ during portions of the time he was in custody awaiting his supervised release revocations and new criminal proceedings. It further appears that, on or about January 18, 2019, he was transferred to the SRJ in Beaver, West Virginia, and was also housed at some point at the Boyd and Carter County Detention Centers in Kentucky. He is now in the custody of the Federal Bureau of Prisons ("BOP") at USP Coleman II in Sumterville, Florida. Clearly, Plaintiff was not continuously incarcerated at the SCRJ during the times complained about in the amended complaint; nonetheless, he contends that, "each time" he was housed at the SCRJ, he had problems with receiving his proper medication and meal supplements.

belligerent, made racial statements and slurs about Plaintiff, and shared information about his medical condition and medication with other staff and inmates. (*Id.* at 24).[5] Plaintiff further alleges that, on October 21, 2018, Jessica Thornhill ("Thornhill"), who is believed to have then been PrimeCare's Health Services Administrator, refused to read Plaintiff's "medical information" and, from October 21, 2018 to November 26, 2018, she allegedly allowed PrimeCare's nurses to crush his medication and administer it at inconsistent times, or not at all. Plaintiff further alleges that Thornhill ignored his "complaints and medical needs" about not consistently receiving his doctor-prescribed meal supplements. (*Id.* at 25).

Plaintiff further alleges that, on or about November 27, 2018, after he filed a grievance addressing the problems with Fouts-Sneed, and his concerns about his medication and meal supplement issues, J.T. Binion ("Binion"), the former Superintendent of the SCRJ, said he would "look into the issue," and the nurse would be kept away from him, but nothing changed. (*Id.* at 26). The amended complaint further contends that, after Plaintiff allegedly went above Binion's head and contacted someone at the WVDCR, Binion, in retaliation, ordered that Plaintiff be segregated for his meals one hour before the mealtimes for other inmates, which allegedly caused confusion for the kitchen and medical staff, made a "spectacle" of Plaintiff, and allegedly resulted in him sometimes not receiving any meal trays at all. (*Id.*)

Plaintiff subsequently filed, in piecemeal, additional documents (ECF Nos. 12, 13, and 14) in which he appears to allege that his problems with medication administration

---

[5] Plaintiff's amended complaint attempted to assert a claim under the Health Care Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d-6 grounded in the sharing of information about his medical condition. However, the presiding District Judge dismissed that claim on July 12, 2022. (ECF No. 41). Thus, the undersigned will not further address those allegations herein.

and meal supplements continued to occur after his transfer to the SRJ in January of 2019, and were still occurring in September of 2019 when he filed these additional documents. However, the undersigned notes that Plaintiff did not move for leave to amend his amended complaint to include these additional allegations and the court has not granted any such amendment. Nonetheless, when they filed their motion to dismiss and alternative motion for summary judgment, the PrimeCare Defendants viewed the scope of the amended complaint as involving a time period <u>beginning in January of 2019</u>, when he was incarcerated at the SRJ, and that time period is the focus of their motion. (ECF No. 35 at 8-10). However, the medical records provided by the PrimeCare Defendants, which span from 2011 to 2019, do include records from the operative time period, which will be discussed *infra*. (ECF No. 34, Exs. D and E).

Plaintiff's response to the PrimeCare Defendants' motion to dismiss also include medical records containing entries as far back as 2014, which clearly pre-date the time period addressed in the amended complaint and would certainly be barred by the applicable statute of limitations. (ECF No. 46 at 7-9). However, he also refers to medical records that do fall within the operative time period addressed in the amended complaint (July 23, 2016-January 18, 2019) which will be discussed *infra*. (*Id*. at 9-14).

Because Plaintiff did not move to again amend his complaint, and because the undersigned has not affirmatively granted any such amendment, the undersigned construes the scope of Plaintiff's claims, as set forth in his amended complaint, to only address conduct that occurred between July 23, 2016, when he was initially housed at the

SCRJ following his removal from the halfway house, and January 18, 2019, when he was allegedly transferred to the SRJ.[6]

## II.    STANDARDS OF REVIEW

### A.    Motions to Dismiss.

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to liberally construe such complaints. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). Nonetheless, this liberal construction requirement does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions").

A pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the

---

[6] There is a two-year statute of limitations applicable to Plaintiff's claims under 42 U.S.C. § 1983. *See Owens v. Okure*, 488 U.S. 235, 249-50 (1989) (a claim brought under § 1983 borrows the statute of limitations that the forum state uses for general personal injury cases). In West Virginia, that statute of limitations is two years. See W. Va. Code § 55-2-12; *see also Courtney v. Courtney,* 437 S.E.2d 436, 440 (W. Va. 1993). Thus, some of the allegations made by Plaintiff may be barred by the statute of limitations. However, as none of the Defendants has raised that affirmative defense in their dispositive motions, the undersigned declines to address it *sua sponte* as it is also not absolutely clear from the face of the amended complaint document. *See Day v. McDonough*, 547 U.S. 198 (2006) (A statute of limitations defense is not jurisdictional, hence courts are under no obligation to raise the time bar *sua sponte*); *Eriline Company S.A. v. Johnson*, 440 F.3d 648, 657 (4th Cir. 2006) ("Because the statute of limitations is a waivable defense, its restrictions are not jurisdictional in nature, and in an ordinary civil case, 'the district court should [refrain] from raising and considering the statute of limitations defense *sua sponte*.'"); *but see Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 953-54 (4th Cir. 1995) (the statute of limitations may be addressed *sua sponte* when such a defense appears on the face of a complaint filed in forma pauperis pursuant to 28 U.S.C. § 1915).

6

grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). In evaluating the sufficiency of a complaint, the Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, *supra*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [the Court] to draw on its judicial experience and common sense." *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant law]" will survive a motion to dismiss. *Id.* at 648 (quoting *McCleary-Evans*, 780 F.3d at 585).

"[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted). Moreover, a complaint must state more than "labels and conclusions" and a claim should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, it does not contain

"enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570.

**B.    Motions for Summary Judgment.**

The PrimeCare Defendants have alternatively moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure and provided documents outside of, and not integral to, the amended complaint in support of their motion.   In evaluating summary judgment motions, Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a) (2010).  Material facts are those necessary to establish the elements of a party's cause of action.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable factfinder could return a verdict for the non-movant.  *Id*.  The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  *Overstreet v. Kentucky Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir. 1991).

Rule 56(c)(1) of the Federal Rules of Civil Procedure provides that:

A party asserting that a fact cannot be or is genuinely disputed, must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Subsection (e) of Rule 56 provides that, if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may: (1) give the parties an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and undisputed supporting materials show that the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

A court must neither resolve disputed facts, nor weigh the evidence, *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, the party opposing the motion may not rely upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Sprenkle v. Hartford Life Ins. Co.*, 84 F. Supp. 2d 751 (N.D.W. Va. 2000).

If a party's motion relies upon materials outside of the four corners of the Complaint to support its claim or defenses, as the PrimeCare Defendants' motion does

here, the court may treat a motion to dismiss as one for summary judgment pursuant to Rule 56. *See Jeffers v. Wal-Mart Stores, Inc.*, 84 F. Supp.2d 775, 777 (S.D.W. Va. 2000).

### III.    DISCUSSION

**A.    Plaintiff's claims against the PrimeCare Defendants.**

The undersigned construes Plaintiff's amended complaint to be alleging that the PrimeCare Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The vehicle for such a claim is section 1983 of Title 42 of the United States Code, which provides in pertinent part:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

42 U.S.C. § 1983. While not in itself a source of substantive rights, section 1983 provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To successfully establish a section 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)) [Emphasis added].

In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to

guarantee the safety of the inmates.'"  This is a low standard.  The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" *Id.* at 833.

   To sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the defendant had a "sufficiently culpable state of mind;'" that is, a "deliberate indifference to inmate health or safety." *Id.* at 834. (Citations omitted.)  To satisfy the first element, the prisoner must show "significant physical or emotional harm, or a grave risk of such harm," resulting from the challenged conditions. *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995).  To establish the second element of deliberate indifference, a plaintiff must show that the defendant was personally aware of facts indicating a substantial risk of serious harm, and that the defendant must have actually recognized the existence of such a risk. *See, e.g., Farmer*, 511 U.S. at 838-40; *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994).  The defendant then must have failed to take "reasonable measures" to alleviate the danger. *Farmer*, 511 U.S. at 832.

   A prison health care provider's actions may constitute deliberate indifference to a serious medical need if the treatment is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990); *see also Rogers v. Evans*, 792 F.2d 1052, 1058 (11 Cir. 1986) (collecting cases).  "Serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Gaudreault v. Munic. of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990). Deliberate indifference may be demonstrated by either actual intent or reckless disregard. *See Benson v. Cady*, 761 F.2d 335, 339 (7th

Cir. 1985).  A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position.  *Id.*  Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment.  *See Estelle v. Gamble*, 429 U.S. at 106; *Miltier*, 896 F.2d at 851-852.

The PrimeCare Defendants have moved to dismiss Plaintiff's amended complaint for failure to state a plausible Eighth Amendment claim of deliberate indifference to a serious medical need.  In the alternative, and notwithstanding that no discovery has been conducted at this stage of these proceedings, the PrimeCare Defendants assert that Plaintiff's medical records and other exhibits they have provided demonstrate that they were not deliberately indifferent to his serious medical needs and that they are entitled to judgment as a matter of law on Plaintiff's claims.

1.    PrimeCare.

Because PrimeCare is a contracted medical provider for the WVDCR, the deliberate indifference standard is applicable to the conduct of both PrimeCare and its employees, who, in that context, are acting under color of state law.  *West v. Atkins*, 487 U.S. 42 (1998).  However, the Fourth Circuit and other federal courts have held that "[a] private corporation is liable under § 1983 . . . [only] when an official policy or custom causes the alleged deprivation of federal rights."  *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727 (4th Cir. 1999) (extending "municipal liability" requirements of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), to § 1983 liability of private corporations); *see also Motto v. Corr. Med. Servs.*, Case No. 5:06-cv-00163, 2007 WL 2897854, 2007 U.S. Dist. Lexis 72436 (S.D.W. Va., Sept. 27, 2007) (Johnston, J.) (unpublished); *Price v. Corr. Med. Servs.*, Case No. 2:08-cv-00259, 2008 WL 5377779 (S.D.W. Va., Dec. 18, 2008) (Faber,

J. unpublished); *Howell v. Evans*, 922F.2d 712, 723-34 (11th Cir. 1991); *Nelson v. Prison Health Services, Inc.*, 9991 F. Supp. 1452, 1465 (M.D. Fla. 1997).

Thus, a complaint must contain sufficient allegations that an official policy or custom fairly attributable to the corporate Defendant proximately caused the alleged deprivation of rights to the Plaintiff. *See Walker v. Prince George's Cnty.*, 575 F.3d 426, 431 (4th Cir. 2009) (affirming district court dismissal of *Monell* claim where complaint failed to make any allegations about the existence of a policy, custom, or practice); *McMahon v. Cnty. Comm'rs of Kent Cnty.*, No. JFM-13-cv-490, 2013 WL 2285378, at *3 (D. Md. May 21, 2013) (explaining that although *Monell* does not impose a heightened pleading requirement, a complaint must contain adequate allegations of an official policy that is fairly attributable to the deprivation of constitutional rights); *see also Kinder v. PrimeCare Medical, Inc.*, No. 3:13-cv-31956, 2015 WL 1276748, *9 (S.D.W. Va. March 19, 2015) (Chambers, C.J.); *Mullins v. Prime Care Medical, Inc.*, No. 2:12-cv-05825, 2014 WL 1260378, *9 (S.D.W. Va. March 27, 2014) (Johnston, J.); *Edwards v. State*, No. 2:00-cv-00775, 2002 WL 34364404, *12 (S.D.W. Va. March 29, 2002) (Goodwin, J.) ("To state a case against PrimeCare, [plaintiff] must show that a policy or custom or ratification of a policy or custom and procedure by PrimeCare caused a constitutional violation.").

Defendants assert that Plaintiff has not alleged any such policy or custom by PrimeCare. The undersigned agrees that there is no such allegation in the amended complaint.[7] Accordingly, the undersigned proposes that the presiding District Judge

---

[7] Plaintiff's response makes several passing references to a "policy" of crushing his medication. (ECF No. 46 at 4, 6). However, no such references appear in the amended complaint and generally a party may not amend their pleading by asserting new facts or allegations in a response to a motion to dismiss. See, e.g.,*Weakley v. Homeland Sec. Sols., Inc.*, No. 3:14-cv-785, 2015 WL 11112158, *5 (E.D. Va. May 19, 2015), *report and recommendation adopted sub nom. Weakley v. Homeland Sec. Sols., Inc.*, 2015 WL 11112159 (E.D. Va. June 16, 2015), *aff'd*, 622 F. App'x 253 (4th Cir. 2015) (quoting *Marsh v. Virginia Dept. of Transp.*, No. 6:14-cv-6, 2014 WL 6833927, at *8 (W.D. Va. Dec. 3, 2014)) ("the complaint may not be amended by

**FIND** that Plaintiff's Amended Complaint fails to state a plausible deliberate indifference claim against PrimeCare itself and, therefore, Plaintiff's claim against PrimeCare should be dismissed.

        2.      Thornhill and Fouts-Sneed.

Thornhill and Fouts-Sneed, however, are individuals and therefore can be held liable under § 1983, but only if their acts or omissions were sufficiently harmful to evidence a deliberate indifference to Plaintiff's serious medical needs. *Estelle*, 429 U.S. at 105. The burden of demonstrating deliberate indifference to a serious medical need is very high. It is well-settled that:

> A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. *See Farmer [v. Brennan]*, 511 U.S. [825] 832-35 [(1994)]; *Sosebee v. Murphy*, 797 F.2d 182-83 (4th Cir. 1986); *Loe v. Armistead*, 582 F.2d 1291, 1296-97 (4th Cir. 1978).

*Rush v. VanDevander*, 2008 WL 495651 (W.D. Va., Feb. 21, 2008); *Banks v. Green Rock Corr. Ctr. Med. Dept.*, 2007 WL 2903673 (W.D. Va., Oct. 3, 2007). However, negligence is not sufficient to demonstrate deliberate indifference to a serious medical need. *See Webster v. Jones*, 554 F.2d 1285 (4th Cir. 1977); *see also Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998).

Likewise, disagreements between a health care provider and the inmate over a diagnosis and the proper course of treatment are not sufficient to support a deliberate indifference claim, and questions of medical judgment are not subject to judicial review.

---

the briefs in opposition to a motion to dismiss."); *but see Johnson v. United Parcel Serv., Inc.,* No. JKB-19-cv-1916, 2020 WL 231379, at *4 (D. Md. Jan. 15, 2020) (court considered clarifying information in pro se plaintiff's response to motion in deciding whether plaintiff has stated a plausible claim when defendants were on notice of the allegations and able to fully respond).

*Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). As noted by the Fourth Circuit, an inmate is not entitled to unqualified access to health care and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate. *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

As noted above, the PrimeCare Defendants appear to misapprehend the scope or timeframe of Plaintiff's deliberate indifference claims. Their memorandum of law asserts:

> As documented by his grievances, it appears that [Plaintiff] first began to complain about the crushing of his medication and the fact that his HIV medication was not given at exactly the same time every day in January of 2019. Those complaints continued through at least July 4, 2019. *See* **Exhibit A**, Inmate's Sick Calls and Inmate Grievances dated 1/14/19, 1/21/19, 4/29/19, 5/9/19, and 7/4/2019. All of these grievances were addressed by the PrimeCare employees, as evidence[d] by their responses at the bottom of each of the grievances. In addition, the Plaintiff apparently wrote a letter to Debbie Hissom, RN, BSN, CCHP, Director of Correctional Healthcare at the Division of Corrections and Rehabilitation sometime in early 2019. By letter dated February 12, 2019, Ms. Hissom responded to his letter stating that she had discussed with the medical department at Southern Regional Jail the importance of not crushing his medication and assuring him that it would not be crushed in the future. She further stated that they would make every effort in the future to administer the medication as close to the same time each day as possible. *See* Letter dated February 12, 2019 from Debbie Hissom to the Plaintiff, attached hereto as **Exhibit B**.

(ECF No. 35 at 8-9 and Exs. A and B). During this time period, however, Plaintiff had already been transferred from the SCRJ to the SRJ and this later conduct is not addressed in the amended complaint. Thus, this evidence does not address Plaintiff's treatment while at the SCRJ between July 23, 2016 and January 18, 2019 when he was allegedly housed at the SCRJ.

The PrimeCare Defendants further offer an e-mail drafted by Defendant Thornhill in which she summarizes her opinion concerning Plaintiff's treatment while he was at the

SCRJ.  That letter states:

> This patient was an inmate here at SCRJ for several months and in that time was repeatedly difficult, rude, and unable to please with the medical department.  He was given his meds as ordered, which was not to his liking as we were not able to give them at the exact same time daily.  He was placed on different "check" lists (blood sugars, wounds) in an attempt to appease him over his medications.  We went above and beyond because he was not satisfied with his diet orders.  There were repeated grievances filed with myself and the Captains at this facility regarding his meds and meals.  Security took to bringing him up the hall and having him eat in an interview room as he repeatedly lied stating that he was not receiving his ordered diet.  He was eventually moved to Carter County as an administrative move for his repeated harassment of myself and the nurses in my department even after going above and beyond to meet needs.

(ECF No. 35 at 9 and Ex. C).

Finally, the PrimeCare Defendants have provided a collection of Plaintiff's medical records, which again largely focus on the time period after January of 2019.  Defendants emphasize that Plaintiff began seeing Dr. Jonathan Cohen, an infectious disease specialist employed by PrimeCare, for management of his HIV, on January 30, 2019.  The PrimeCare Defendants' memorandum of law further asserts:

> He the[n] saw him again on February 6, 2019, February 27, 2019, April 10, 2019, and April 24, 2019.  He notes in his records that he had the Plaintiff's HIV genotype reviewed and because his strain of HIV was a particularly resistant virus, he changed his HIV medications in an attempt to reduce his viral load and bring this resistant virus under control.  *See*, Medical Sick Calls attached hereto as **Exhibit D**.  Because the Plaintiff had expressed dissatisfaction with treatment by Dr. Cohen, in August 2019, attempts were made to schedule an appointment for him at the Marshall Health Infectious Disease Department in Huntington, West Virginia.  He was seen for the first time by Dr. Gul, an infectious disease physician at Marshall Health on September 17, 2019 and the care for his HIV was thereafter transferred to that office.  *See* Chart Notes attached hereto as **Exhibit E**.

(ECF No. 35 at 9-10 and Exs. D and E).  Again, these records do not address the operative time period of the amended complaint.

16

The PrimeCare Defendants admit that Plaintiff's HIV is a serious medical condition sufficient to meet the first prong of the deliberate indifference standard. (ECF No. 35 at 10). However, they contend that there is no evidence to demonstrate that they "responded to his serious medical need with deliberate indifference." (*Id*.) Their brief further asserts that "all of his complaints were addressed by nurses, PrimeCare physicians and an outside infectious disease physician at Marshall Health." (*Id*.) Therefore, they contend that Plaintiff cannot satisfy the second prong of deliberate indifference to establish an Eighth Amendment violation. (*Id*.)

In Plaintiff's response to the PrimeCare Defendants' motion, he disputes Defendants' arguments by giving his own explanation of facts contained in the medical records and other exhibits offered by Defendants. He calls these explanations "affidavits," although they are not made under oath, affirmation, or penalty of perjury. Likewise, however, none of the documents offered by the PrimeCare Defendants is sworn evidence.

Plaintiff emphasizes that the Atripla medication he was taking for HIV, among other medications he was on, is a time-released medication and that he was instructed that it was important for him to take it at the same time every day. (ECF No. 46 at 4). He further reasserts that Defendant Thornhill and the nursing staff did not reference the medication instructions and repeatedly crushed the time released medication and administered it at inconsistent times against instructions. (*Id*.) He further contends that the misadministration of his medication, combined with the failure to properly receive his meal supplements caused him to "lose weight" and resulted in the failure of his immune system, as allegedly evidenced by his blood work showing an increase in his viral load and a decrease in his CD 4 levels. (*Id*.; ECF No. 7, Ex. 1). He further asserts that

these problems occurred only at the SCRJ and nowhere else that he was incarcerated, "hence deliberate indifference." (ECF No. 46 at 4).

Plaintiff also points to specific entries in his medical records demonstrating that his medications were being crushed, that there were orders that his medication not be crushed and mixed together into a cocktail, and that he be provided double portions of his meals and his "p.m. snack bags." (*Id*. at 5-6). Plaintiff asserts that the drug cocktail caused irritation in his throat and anal bleeding. (*Id*. at 13-14). He also asserts that he lost 10 pounds over a two-week period due to not receiving his meal supplements. (*Id*. at 5-6).

Plaintiff further asserts that a review of his medical records demonstrates that he was consistently not receiving his medication at the same time every day. (*Id*. at 8-10). Plaintiff contends that Defendant Fouts-Sneed was one of the nurses who regularly crushed his medication in violation of the order not to, and did so simply to aggravate and harass him. (*Id*. at 13-14). Plaintiff argues that all this evidence demonstrates these defendants' deliberate indifference to his serious medical needs and that their motion to dismiss and for summary judgment should be denied.

The PrimeCare Defendants reply brief contends that Plaintiff's "self-serving statements of how these exhibits support his argument" are "insufficient to serve as affidavits in support of his argument to overcome [their motion]." (ECF No. 48 at 2). Their reply further asserts that, to the extent that Plaintiff alleges that he "lost weight [due] to not having his diet," medical records demonstrate that he actually "consistently gained weight from December 12, 2017, when he weighed 226 pounds, to July 2, 2019, when he weighed 258 pounds." (*Id*.) They further assert that "this represents a BMI that is overweight for an adult make of his stated height of 6 feet 2 inches." (*Id*. at 2 and Ex.

A).  Therefore, the PrimeCare Defendants assert that Plaintiff has failed to show any physical injury sufficient to support his claims for emotional distress as required by 42 U.S.C. § 1997e(a).  (*Id.*)

Although both Plaintiff and the PrimeCare Defendants have provided medical records that fall outside the operative time period of the amended complaint, there are medical records in evidence that concern the operative time period which demonstrate that there are genuine issues of material fact concerning Plaintiff's deliberate indifference claims and those claims should be further developed in discovery.  Specifically, although it is somewhat unclear from the medical records as to which regional jail facility Plaintiff was in at the time, there are medical records from July 2016 indicating that Atripla was ordered for Plaintiff (ECF No. 34, Ex. E at 17).  There is also a medical record entry from December 1, 2017 in which NP-C Zach Holbert ordered that Plaintiff receive "P.M. snack due to medication" and "double portion at meal time."  (ECF No. 34, Ex. D at 4).  The December 1, 2017 entry further states that Plaintiff's Atripla be given "at the same time every day."  (*Id.*)  There are other records from November and December of 2017 indicating that Plaintiff was having problems with the consistent administration of his Atripla and that he was not getting the correct meal supplements.  (ECF No. 34, Ex. E at 16-17).

There is also an entry in the medical records from December 14, 2017, where Plaintiff was complaining about sores in his mouth, which he attributed to the "crushing and floating of meds."  (ECF No. 34, Ex. D at 3-4).  Although Dr. Alfred Baldera noted no lesions in his mouth, he "suggested crushing and floating of each medication individually, rather than cocktail."  (*Id.*)  Plaintiff then appeared for an appointment with Dr. Baldera a week later still complaining about irritation in his mouth.  (*Id.* at 3).

There are additional entries in Plaintiff's medical records from November of 2018 in which Plaintiff complained about multiple problems, including issues with his HIV medication and his diet order, which was apparently renewed on November 15, 2018. (*Id.*) In another record from December 6, 2018, Plaintiff again complained of irritation in his mouth, which he believed was thrush. Dr. Baldera noted no thrush in his mouth and further noted that the only way Plaintiff could "be certain of nearly exact medication delivery is to be housed in medical," suggesting that he was still having problems with the consistent administration of his medication. That entry further suggests that Plaintiff refused to be housed in the medical unit at that time. (*Id.* at 2-3). However, the undersigned notes that, in the grievances filed by Plaintiff that were attached to his initial complaint, he had previously filed a grievance in which he requested to be housed in medical in order to timely receive his medication, but that request was refused by PrimeCare employee Anna Hager on January 2, 2018. (ECF No. 2, Ex. 1 at 7).

The medical records further suggest that Plaintiff's complaints concerning problems with his meal trays and the crushing of his medication continued into 2019, although it appears that he had been transferred from the SCRJ by that time. (ECF No. 34, Ex. D at 1-2; Ex. E at 1-15). The undersigned also notes that there is an instruction at the top of Plaintiff's medical records in both Exhibits D and E stating "DO NOT CRUSH MEDS." (ECF No. 34, Ex. D at 1; Ex. E at 1). However, it is unclear when that instruction was added to his records.

Plaintiff contends that the PrimeCare Defendants recklessly disregarded instructions to ensure that he took his HIV medication at the same time each day and that those medications not be crushed and manipulated. He further asserts that their conduct constituted cruel and unusual punishment as the nurses continued to crush his

medication out of spite.  Defendants' own evidence of record suggests that PrimeCare nurses continued to crush Plaintiff's medication and that he was not receiving it in a consistent manner.  Plaintiff further contends that being forced to take his medication in this form of a "toxic cocktail" caused him to have chronic throat irritations and anal bleeding, caused his viral load to worsen, and caused him mental stress and anxiety. Taking the evidence in the light most favorable to Plaintiff, his medical records present disputes of fact concerning these issues which have not been fully addressed in the PrimeCare Defendants' motion and would be better resolved following a period for discovery.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that there are genuine issues of material fact, and that Defendants Thornhill and Fouts-Sneed are not presently entitled to judgment as a matter of law.  Accordingly, their Motion to Dismiss and alternative Motion for Summary Judgment (ECF No. 34) should be denied, and further development of the claims against Thornhill and Fouts-Sneed permitted.

## B.    Claim against Defendant Binion.

As noted above, Plaintiff claims that, after he filed a grievance addressing the alleged problems with Defendant Fouts-Sneed and his concerns about his medication and meal supplement issues, on or about November 27, 2018, J.T. Binion ("Binion"), the former Superintendent of the SCRJ, said he would "look into the issue" and the nurse would be kept away from him, but nothing changed.  (ECF No. 7 at 26).  The amended complaint further states that, at some point, Plaintiff allegedly went above Binion's head and contacted the WVDCR Central Office.  He claims that, after that, Binion, in retaliation, ordered that he be segregated for his meals one hour before the regular

mealtimes for other inmates, which allegedly caused confusion for the kitchen and medical staff, made a "spectacle" of him, and resulted in him sometimes not receiving any meal trays at all.  (*Id.*)

Binion construes Plaintiff's claim against him to be alleging a claim of retaliation under the First Amendment.  (ECF No. 33 at 4).  It is well-established that prison officials may not retaliate against prisoners for exercising their right to redress prison grievances. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 544-45 (4th Cir. 2017); *Hudspeth v. Figgins*, 584 F.2d 1345, 1348 (4th Cir. 1978); *see also Hudson v. Palmer*, 468 U.S. 517, 523 (1984) (recognizing First Amendment right to petition for redress of grievances).

As noted by Binion's memorandum of law, to state a plausible First Amendment retaliation claim, Plaintiff must establish: (1) that he engaged in protected First Amendment activity; (2) that Defendant took some action that adversely affected his First Amendment rights; and (3) that there was a causal relationship between his protected activity and Defendant's conduct.  *Martin v. Duffy*, 977 F.3d 294, 298–299 (4th Cir. 2020) ("*Martin II*"); s*ee also Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005).  Where retaliatory conduct would "deter a person of ordinary firmness from the exercise of First Amendment rights," the claim may proceed. *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) ("*Martin I*") (quoting *Constantine*, 411 F.3d at 500).

However, retaliation claims in the prison context "should be treated with skepticism because even legitimate acts of discipline taken by prison officials are in some sense retaliatory."  S*ee Cochran v. Morris,* 73 F.3d 1310, 1317 (4th Cir. 1996) (finding that the district court did not abuse its discretion in dismissing plaintiff's claims of retaliation where they lacked a nexus to the misconduct alleged); *see also Dawes v. Walker*, 239 F.3d

489, 492 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (To survive summary dismissal, a plaintiff asserting First Amendment retaliation claims must advance non-conclusory allegations establishing each element of such claim); *accord Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003). "[T]he plaintiff must show that the defendant's retaliatory action was substantially motivated by the plaintiff's decision to exercise a constitutionally protected right, and that the action impaired the exercise of that right. *See ACLU v. Wicomico Cnty.*, 999 F.2d 780, 785 (4th Cir. 1993). As recently addressed in *Martin II*, however, the Fourth Circuit has recognized that, once a plaintiff establishes a *prima facie* case of retaliation, a defendant may rebut that presumption by demonstrating that "it would have reached the same decision . . . in the absence of the protected conduct." 977 F.3d at 299. This is known as the "same decision" test. The *Martin II* Court further stated:

> [C]ourts must take care to "afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (citing *Sandin v. Conner*, 515 U.S. 472, 482, 115 S. Ct. 2293, 132 L. Ed.2d 418 (1995)). But the obligation to view prison officials' explanations charitably does not free officials from providing any explanation at all. Once a plaintiff establishes his protected conduct was a substantial or motivating factor in the defendant's decision to take adverse action, the defendant is appropriately tasked with explaining why her decision was not animated by retaliatory motives.

*Id.* at 301.

Binion's motion to dismiss asserts that Plaintiff's allegations against him fail to rise to the level of a plausible First Amendment violation. His memorandum of law in support of his motion asserts:

> Here, Plaintiff alleges that Defendant required him to eat his meals by himself and that his meals would be served one hour before regular meal time. Plaintiff alleges Defendant took this action after Plaintiff made complaints to the WVDCR and that it was in retaliation. Plaintiff does not

23

> specify how he complained to the WVDCR or exactly what the complaint
> stated. Thus, it is not clear on the face of the Amended Complaint that
> Plaintiff even engaged in a protected First Amendment activity.

(ECF No. 33 at 4). Binion further asserts that Plaintiff acknowledges that Binion arranged

for him to receive his meals separately from the mainline population to ensure that he

consistently received the correct trays with his double portions as ordered by the doctor,

but felt he was being made a "spectacle" to other staff and inmates as a result. (*Id.* at 5).

His memorandum further states:

> Plaintiff makes no allegation that he was further deprived his meals, but
> only complains that he did not like the action Defendant took to ensure that
> Plaintiff's complaints were resolved. Based on the clear language of the
> Amended Complaint, Plaintiff has not alleged that Defendant took some
> action that affected his First Amendment rights or that there was a causal
> relationship between Plaintiff's alleged complaints to the WVDCR and
> Defendant's conduct. Accordingly, Plaintiff's claim fails as a matter of law
> because this claim is not plausible on its face.

(*Id.*) Plaintiff did, however, allege that he was further denied proper meal supplements.

(ECF No. 7 at 27).

Binion's motion documents also assert that he is entitled to qualified immunity on

Plaintiff's claim against him because Plaintiff has not alleged a clearly established

constitutional violation against him. (*Id.* at 5-7). Qualified immunity shields government

officials "from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional law of which a reasonable person would have

known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982)); *see also Haze v. Harrison*, 961 F.3d 654, 660 (4th Cir. 2020);

*Meyers v. Baltimore Cty.*, 713 F.3d 723, 731 (4th Cir. 2013). The qualified immunity

doctrine affords officers "'ample room for mistaken judgments' by protecting 'all but the

plainly incompetent or those who knowingly violate the law'" and it "insulates them from

'bad guesses in gray areas.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *Marciello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

A clearly established right should not be defined broadly or "at a high level of generality," *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011), and is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S.658, 664 (2012). The Supreme Court has confirmed that "a case directly on point [is not required], but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. Therefore, when confronted with a claim of qualified immunity, a court must ask the following question: "Taken in the light most favorable to the party asserting the injury, do the [specific] facts alleged show the officer's conduct violated a [clearly-established] constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Binion's memorandum of law further contends:

> The plaintiff must plead facts which, if true, describe a violation of a clearly established statutory or constitutional right of which a reasonable public official, under an objective standard, would have known. The failure to so plead precludes a plaintiff from proceeding further, even from engaging in discovery, since the plaintiff has failed to allege acts that are outside the scope of the defendant's immunity. *Dominque v. Telb*, 831 F.2d 673, 676 (6th Cir. 1987). Plaintiff's Amended Complaint is void of any allegations as to how Defendant's actions or omissions violated a clearly established statutory or constitutional rights of which a reasonable person would have known. To defeat qualified immunity, "'the existing authority must be such that the unlawfulness of the conduct is manifest.'" *Merchant v. Bauer*, 677 F.3d 665, 656 (4th Cir. 2012) (quoting *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998)). The question is "whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted." *See Raub v. Campbell*, 785 F.3d 876, 882 (4th Cir. 2015); *Jones v. Chapman*, Civil Action No. ELH-14-2627, 2017 U.S. Dist. LEXIS 87907, at *78-79 (D. Md. June 7, 2017). It is not enough that the officer should have recognized it; the officer must also have recognized that his actions were insufficient to mitigate the risk of harm to the inmate arising from his medical needs.

Because the Plaintiff has not alleged any facts or conduct by Defendant that violates clearly established statutory or constitutional rights of which a reasonable person would have known, the claims must be dismissed.

(*Id*. at 6-7).

Plaintiff's response to Binion's motion is limited to his assertion that, "in attempting to exhaust his in-house remedy," he "personally contacted" Binion about his medication and medical diet. (ECF No. 46 at 1). He states that Binion told him that "medical [handles] meds and that he would make sure [Plaintiff] got his medically prescribed meals by segregating [him] at breakfast 5:00 a.m., lunch and dinner time." (*Id*.) Plaintiff further assert:

> This was on a Wednesday while [Binion] was there [but] he left on Friday through Monday and I wasn't given my medical meals. [Binion's] officers under his supervision denied me my meals for Friday to Monday and afterwards as well . . . . Superintendent J.T. Binion's Motion to Dismiss should not be granted as he was a senior officer who[] told me I would be provided my medical diet. He did not. I was then allowed to lose weight and adding stress to my medical condition due to the medical meal deprivation. I was prescribed that and I had a right to receive it.

(*Id*. at 1-2).

To the extent that Plaintiff's claim against Binion may be construed as a claim of retaliation governed by the First Amendment, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff has stated a plausible First Amendment claim. Plaintiff has alleged that he filed a grievance that was reviewed by Binion and when he wasn't satisfied with Binion's response, he contacted Binion's superiors at the WVDCR. Almost immediately thereafter, Binion allegedly stated that, "[since] [he] called the [WVDCR] (his [bosses]), he decided to segregate me to eat by myself every meal one hour ahead of chow time . . . ." (ECF No. 7 at 26).

As clearly established in *Martin I*, and taking the Plaintiff's allegations, which must be liberally construed, as true, Plaintiff has sufficiently alleged that he engaged in First Amended protected conduct.  Furthermore, Binion took action in segregating and singling out Plaintiff for his meals, which could deter a person of ordinary firmness from exercising his First Amendment rights.  And, given the temporal proximity of this action to Plaintiff's grievance and complaints, and Binion's alleged statement to Plaintiff thereafter, Plaintiff has sufficiently alleged a causal connection between the two. Therefore, Plaintiff has stated a plausible retaliation claim against Binion and Binion is not entitled to qualified immunity thereon.  As recently addressed in *Martin II*, Binion may ultimately be able to demonstrate that he would have made the same decision and taken the same action in absence of Plaintiff's complaint to the WVDCR in an effort to ensure that Plaintiff received his proper meal supplements, but that is an argument that he must develop in further proceedings.

## V.    RECOMMENDATIONS

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Defendant Binion's Motion to Dismiss (ECF No. 32), **GRANT** the PrimeCare Defendants' Motion to Dismiss and alternative Motion for Summary Judgment (ECF No. 34) with respect to the dismissal of PrimeCare Medical, Inc., but **DENY** that motion with respect to the claims against Defendants Thornhill and Fouts-Sneed.

Plaintiff is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., Senior United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(C), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff

shall have fourteen days (filing of objections) and then three days (service/mailing), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of this Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may only be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Plaintiff, and to transmit a copy to counsel of record.

February 13, 2023

Dwane L. Tinsley
United States Magistrate Judge